|,BAGNERIS, J.,
dissenting with reasons.
I respectfully dissent from the majority for the following reasons.

FACTS

Mrs. Charlene Grayson’s cause of action is for the wrongful death of her father, Jack Van Natta, who died after eating raw oysters infected with vibrio vulnificus *92 while vacationing in New Orleans. The plaintiff originally brought suit against The Department of Health and Hospitals (hereinafter DHH) and three French Quarter restaurants and their insurers: Felix’s Restaurant and Oyster Bar, Mike Anderson’s Seafood Restaurant and Oyster Bar, and The Seaport Cafe and Bar, filing her petition on June 23, 1994. She argued that DHH was negligent because it breached its mandatory duty to ensure that these restaurants post warnings in accordance with the State Sanitary Code regarding the dangers of eating raw seafood and that the restaurants themselves were also negligent for not providing the warnings. She further alleged a cause of action in redhibition against the restaurants because the raw oysters were “absolutely useless and imperfect” in that her father would not have purchased and consumed them had he known they were infected with vibrio vulnificus.
pin plaintiffs First Supplemental and Amending Petition, filed July 18, 1994, defendants, The Seaport Cafe and Bar and its insurer, were dismissed from the suit and The Desire Oyster Bar and its insurer were substituted in their place. The plaintiff eventually settled with the three restaurants. And went to trial against DHH as the only remaining defendant.
The Second Supplemental and Amending Petition, filed on October 5, 1994, added the State of Louisiana through the Office of the Attorney General (hereinafter Attorney General) to the suit because plaintiff anticipated that DHH would defend itself by arguing the applicability and constitutionality of La. R.S. 9:2798.1.
DHH filed a motion for summary judgment that was granted. The plaintiff filed an appeal and this Court reversed the trial court and remanded the case for a trial on the merits. After a trial, judgment was rendered against DHH in favor of the plaintiff. DHH appeals the trial court’s judgment.

DISCUSSION

DHH argues that the trial court erred in denying it the immunity granted by the statute, LSA-R.S. 9:2798.1, which states in pertinent part:
“B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(2) To acts or omissions, which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.”
|sApplying La.R.S. 9:2798.1 to the facts of this case, we conclude that it bars recovery by the plaintiff against the DHH. La. R.S. 9:2798.1, requires that in order to impose liability on the DHH for discretionary acts, not only must there be a finding of liability under the standard duty/risk analysis, but there must also be a finding that either the conduct complained of was not reasonably related to the DHHR’s legitimate governmental objectives or, it constituted criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
Assuming the existence of liability on the part of DHH under a duty/risk analysis, La.R.S. 9:2798.1 would nevertheless bar recovery. The failure to warn complained of by the plaintiff constituted a failure to perform a discretionary act within the lawful course and scope of the duties of the DHH. Any warning would have been reasonably related to the DHH’s ob *93 jectives, and the failure to warn did not constitute the gross misconduct contemplated by the statute.
Further, we are of the opinion that the DHH’s acts or omission in this case do not satisfy the requirements for the imposition of liability set out in La.R.S. 9:2798.1, but the DHH’s conduct does not even satisfy the standard duty/risk analysis necessary to impose liability notwithstanding the applicability of La.R.S. 9:2798.1.
Under the duty/risk analysis adopted by the courts of this state, four inquiries must be answered in the affirmative before a plaintiff can recover based on a negligence theory.
I. Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm, which occurred?
II. Did the defendant owe a duty to the plaintiff?
III. Was the duty breached?
|4IV. Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
Mart v. Hill, 505 So.2d 1120 (La.1987); see also, Crowe, The Anatomy of a Tort-Greenian, as Interpreted by Crowe who has been Influenced by Malone-A Primer, Loy.L.Rev. 903 (1976).
Based on the facts of this case, we conclude that all four of the above inquiries cannot be answered affirmatively. The first element, causation in fact, requires that the defendant’s conduct must have contributed to the plaintiffs harm in some substantial way. The omission on the part of the defendant which the plaintiff complains of and which must have contributed to the plaintiffs harm in order for causation in fact to exist, was a failure to warn the general public about the dangers inherent in eating raw oysters, specifically those dangers posed by the bacteria vibrio vulnificus.
Since this particular bacteria generally only affects persons with certain underlying risk factors, any warning would have necessarily been to the effect that if you have one of the underlying risk factors, you shouldn’t eat raw oysters. Van Natta was an alcoholic with a severely damaged and diseased liver. Van Natta failed to heed the warnings from his physicians to stop drinking.
The Louisiana Supreme Court has held that although it is presumed that warnings will be heeded, this presumption can be rebutted if there is persuasive evidence that an adequate warning would have been futile under the circumstances. Bloxom v. Bloxom, 512 So.2d 839 (La.1987). In this case we are persuaded that an adequate warning would have been futile given the evidence that the plaintiff did not heed the medical advice give by his physician regarding his drinking habits. Thus, the failure of the DHH to warn the general public of the dangers of vibrio vulnificus was not a cause in fact of the plaintiffs harm.
|fiEven if I were to conclude that a failure to warn was a cause in fact of the plaintiffs harm, the plaintiff has also failed to establish the remaining elements of his case under the duty/risk analysis.
After a careful analysis of the relevant statutory provisions I conclude that there was no statutorily imposed duty on the part of the DHH to issue warnings about vibrio vulnificus. However, since the DHH had undertaken various studies of these bacteria, and since it knew that there was a danger posed by these bacteria to a small segment of the population, DHH had a duty, once it had sufficient information, to issue some type of warning.
*94 DHH fulfilled this duty when it published the Monthly Morbidity Report in August of 1982, a full year before the events, which lead to this suit, took place. This report summarized what the DHH knew about vibrio vulnificus at the time, including the deadly effects it has on certain persons with underlying risk factors, what those risk factors are, and the proper methods of prevention and treatment. The report specifically stated that physicians should warn patients with chronic liver and kidney diseases and other conditions causing, or capable of causing impaired immune responses, to avoid eating raw oysters.
The fact that the DHH chose not to aggressively disseminate the information contained in the Monthly Morbidity Report to the general public does not constitute a breach of the duty to warn. Since this bacteria only attacks a small percentage of the population, i.e., those with liver disease, kidney disease or other immuno-suppressive condition, the DHH was reasonable in its conclusion that the best way to warn these people was through the medical community. The Monthly Morbidity Report was sent to every physician in Louisiana, the Center of Disease Control in Atlanta, Georgia, and the health departments of several states, including California. I would hold that this satisfied the duty to warn incumbent on the DHH due to its specialized knowledge and position of public trust.
liJDHH makes two other assignments of errors, however I pretermit discussion of those issues based on my disposition of this matter.
Therefore, for the above and foregoing reasons the judgment of the trial court should be reversed.